UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SATNAM SINGH,<br><br>        Plaintiff,<br><br>        v.<br><br>ERIC H. HOLDER, JR., et al.,<br><br>        Defendants. | Civil Action No. 14-387 (ES) (JAD)<br><br>OPINION |

SALAS, DISTRICT JUDGE

### I.     INTRODUCTION

This action arises out of Plaintiff Satnam Singh's Application for Adjustment of Status ("Form I-485 application"). (*See* D.E. No. 1, Complaint ("Compl.")). Despite a "processing timeframe" of four months, Plaintiff's Form I-485 application has been pending before the United States Citizen and Immigration Services ("USCIS") for over ten years, a delay which Plaintiff characterizes as "unreasonable and unconscionable." (*Id.* ¶¶ 13–15, 19). On January 17, 2014, Plaintiff filed a complaint for declaratory relief and petition for writ of mandamus, seeking adjudication of his Form I-485 and adjustment of his status. (*Id.* at 6–7).[1] Presently before the Court is Defendants'[2] motion to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (D.E. No. 12).

---

[1] The Complaint also seeks relief for Satnam Singh's wife, Kawalpreet Kaur, and their three children, Puneet Kaur, Niranterjit Singh, and Simranpreet Kaur. (Compl.). However, on June 30, 2014, the Court issued an Order dismissing them from the action, after the parties stipulated that their applications had been adjudicated. (D.E. No. 10, Order). Consequently, Satnam Singh is the only remaining Plaintiff-Petitioner. (*Id.*).

[2] "Defendants" collectively include Eric H. Holder, Jr., Attorney General of the United States; Jeh Johnson, Secretary of the Department of Homeland Security; Alejandro Mayorkas, Director, United States Citizenship and Immigration Services; United States Citizenship and Immigration Services, by its District Director for the New Jersey District; United States Citizenship and Immigration Services, by its Service Center Director for the Nebraska Service Center; United States Department of Homeland Security; United States Citizenship and Immigration Services.

Defendants primarily argue that this Court lacks subject matter jurisdiction due to a jurisdiction-stripping provision of the Immigration and Nationality Act (INA). (*See* D.E. No. 12-1, Defendants' Brief in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim ("Def. Mov. Br.") at 11–20); *see also* D.E. No. 16, Defendants' Reply Brief ("Def. Reply Br.") at 3–10) (analyzing 8 U.S.C. § 1252(a)(2)(B)(ii)). In opposition, Plaintiff contends that the jurisdiction-stripping provision does not apply because nothing in the relevant statutes permits an indefinite hold, and that an indefinite hold is not an "action" within the meaning of the statute. (*See* D.E. No. 15-4, Plaintiff's Brief in Opposition ("Pl. Opp. Br.") at 4–7).

The Court resolves Defendants' motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b). Because the Court finds that the pace of processing adjustment applications is discretionary and that the jurisdiction-stripping provision outlined in 8 U.S.C. § 1252(a)(2)(B)(ii) applies, Defendants' motion to dismiss is GRANTED and Plaintiff's Complaint for declaratory relief and petition for writ of mandamus is dismissed *with* prejudice.

## II.     LEGAL AND FACTUAL BACKGROUND

### a. Legal Background Pertaining to Adjustment of Status

The Secretary of the Department of Homeland Security ("Secretary") is authorized, in his discretion, to "adjust" to permanent residence status certain aliens who have been admitted to the United States as asylees. 8 U.S.C. § 1159(b). Asylees who have been physically present in the United States for at least one year and who are otherwise eligible may apply for adjustment. 8 U.S.C. § 1159(b)(1).[3]

---

[3] When an alien applies for adjustment of status (via Form I-485), USCIS must conduct several forms of security and background checks to verify that the alien is eligible for lawful permanent residence status. (D.E. No. 12-2, Declaration of Gareth R. Canaan ("Canaan Decl.") ¶ 8). These checks include (1) a fingerprint check by the Federal Bureau of Investigation (FBI) for criminal history records, (2) a check against the TECS database managed by the Department of Homeland Security, and (3) a name check against FBI databases. (*Id.*). The fingerprint check must be less than fifteen months old at the time the application is adjudicated. (*Id.* ¶ 9).

2

An alien who has been granted asylum and applies to adjust his status must be admissible to the United States in order to become a lawful permanent resident. 8 U.S.C. § 1159(b). Among other criteria, a person is not admissible if he "has engaged in terrorist activity," which includes being a member of or providing "material support" to a "terrorist organization." 8 U.S.C. §§ 1182(a)(3)(B)(i)(I), (V), 1182(a)(3)(B)(iv)(VI).[4]

However, Congress amended § 1182 in 2008 to give the Government greater discretion to exempt groups or individuals from the inadmissibility provisions. *See* 8 U.S.C. § 1182(d)(3)(B)(i); Pub. L. No. 110-161, 121 Stat. 1844, 2364–65 (relevant provision of Act). Specifically, the Secretary of State or the Secretary of Homeland Security, after consultation with one another and with the Attorney General, "may determine in such Secretary's sole unreviewable discretion" that a particular person or organization should be exempted from the "engaged in a terrorist activity" inadmissibility provisions of § 1182(a)(3). As a result, USCIS issued a memorandum in 2008 instructing agency adjudicators to withhold adjudicating cases that could potentially benefit from this discretionary authority. (Canaan Decl. ¶ 29).[5]

### b. Plaintiff's Form I-485 Application for Adjustment of Status

Plaintiff, a citizen of India, entered the United States in 2002 and applied for asylum status, which was granted in February 2003. (Canaan Decl. ¶ 3). On May 24, 2004, Plaintiff filed a Form

---

[4] A "terrorist organization" is defined to include three tiers of organizations: (i) a Tier I organization is one formally designated by the Department of State under 8 U.S.C. § 1189; (ii) a Tier II organization is one formally designated by the Secretary of State, in consultation with, or by the request of the Attorney General or the Secretary of Homeland Security; and (iii) a Tier III organization is an undesignated group of two or more individuals that engages in terrorist activity (which means, in part, to incite or commit terrorist activity indicating an intention to cause death or serious bodily injury, to prepare or plan terrorist activity, to solicit funds or membership for terrorist activity or a terrorist organization, or to provide material support to a terrorist organization or to any member of such an organization). 8 U.S.C. § 1182(a)(3)(B)(vi) (defining the "tiers" of terrorist organizations); § 1182(a)(3)(B)(iv) (defining "engages in terrorist activity").

[5] Memorandum from Jonathan Scharfen, Deputy Director, U.S. Customs and Immigration Services, to Associate Directors, et al., U.S. Customs and Immigration Services (Mar. 26, 2008), *available at* http://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files_Memoranda/TRI-%2520Hold-pm-602-0051.pdf.

I-485 application with USCIS, seeking adjustment of status to that of a lawful permanent resident. (*Id.* ¶ 4). Plaintiff's Form I-485 application remains pending. (*Id.*).

In accordance with the USCIS background checks described above in footnote 3, Plaintiff has been fingerprinted six times to remain up-to-date, his preliminary TECS checks have been completed, and the FBI completed his name check in June 2004. (*Id.* ¶¶ 9–11). However, Plaintiff's application for adjustment of status remains pending because of terrorism-related grounds of inadmissibility. (*Id.* ¶¶ 12–13).

Plaintiff admitted on his asylum application and in his opposition brief that while in India he joined Damdami Taksal in 1988 and served the Damdami Taksal as a priest from 1992 to 2001. (Canaan Decl. ¶ 13; Pl. Opp. Br. 12–13). While Plaintiff asserts that his involvement in the organization was "as nothing more than a religious man," (Pl. Opp. Br. 13), Defendants claim that Plaintiff "transported people to political gatherings, attended rallies, and distributed pro-Khalistan political literature." (Canaan Decl. ¶ 13). Defendants claim that Damdami Taksal meets the definition of an undesignated Tier III terrorist organization because it engaged in combat against the Indian government and soldiers from 1984 to 1990. (*Id.*). As a result, Defendants contend that Plaintiff "engaged in a terrorist activity" within the meaning of 8 U.S.C. § 1182(a)(3), and that he is therefore inadmissible. (*Id.* ¶ 14).

However, rather than deny Plaintiff's Form I-485 application, Defendants have placed it on hold in accordance with the 2008 USCIS memorandum. (*See id.* ¶¶ 33, 34). For example, in April 2010, USCIS provided Plaintiff with the following explanation for the delay in processing his Form I-485 application:

> Your case is on hold because you appear to be inadmissible under [Section] 212(a)(3)(b) of the INA ["engaged in a terrorist activity"], and USCIS currently has no authority not to apply the inadmissibility ground(s) to which you appear to be subject. Rather than denying your application based on inadmissibility, we are

>holding adjudication in abeyance while the Department of Homeland Security considers additional exercises of the Secretary of Homeland Security's discretionary exemption authority. Such an exercise of the exemption authority might allow us to approve your case.

(D.E. No. 1-5, Compl., Ex. E ("April 2010 email")). As no exemption currently exists for Plaintiff, USCIS explained that if it "were ordered to complete the adjudication of Plaintiff's application for adjustment of status, the case would likely be denied without prejudice to allow Plaintiff to re-file." (Canaan Decl. ¶ 33). USCIS asserts that it continues to hold Plaintiff's application in case a discretionary exemption becomes available and applicable for Plaintiff's circumstances, (*id.* ¶ 34), and it notes that Plaintiff has been granted work authorization and travel documents, (*id.* ¶ 35).

### III.     LEGAL STANDARD

Defendants seek to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and/or failure to state a claim, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. There are differing standards of review under each. *See Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 428 (D.N.J. 1999) (citing cases).

#### a.  Rule 12(b)(1) – Subject Matter Jurisdiction

Federal courts have limited jurisdiction and are permitted to adjudicate cases and controversies only as permitted under Article III of the Constitution. *See* U.S. Const. art. III, § 2; *see also Phila. Fed'n of Teachers v. Ridge*, 150 F.3d 319, 323 (3d Cir. 1998). Unless affirmatively demonstrated, a federal court is presumed to lack subject matter jurisdiction. *See Ridge*, 150 F.3d at 323 (citing *Renne v. Geary*, 501 U.S. 312, 316 (1991)). The burden of demonstrating the existence of federal jurisdiction is on the party seeking to invoke it. *See Common Cause of Penn. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (citing *DaimlerChrysler Corp. v. Cuno*, 547

U.S. 332, 342 (2006)). Under Rule 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

Additionally, although there is a "strong presumption in favor of judicial review of administrative action," *INS v. St. Cyr*, 533 U.S. 289, 298 (2001), there is also a heightened need for "judicial deference to the Executive Branch . . . in the immigration context where officials exercise especially sensitive political functions," *INS v. Aguirre–Aguirre*, 526 U.S. 415, 425 (1999) (internal quotation marks and citation omitted).

A motion to dismiss under Rule 12(b)(1) "attacks . . . the right of a plaintiff to be heard in Federal court." *Kurtzman*, 45 F. Supp. 2d at 428. When ruling on such a motion, a distinction must be made between a facial and factual attack. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). If the Rule 12(b)(1) motion is a facial attack, "the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." *U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007) (citing *Mortensen* 549 F.2d at 891). On the other hand, when the Rule 12(b)(1) motion is a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen* 549 F.2d at 891.

Here, Defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is a factual attack because it challenges the "actual facts" that support jurisdiction, and not merely how those facts were pled. *PA. Shipbuilding Co.*, 473 F.3d at 514. Accordingly, the Court may "review evidence outside the pleadings" in determining whether subject matter jurisdiction exists. *Id.* (citation omitted).

### b. Rule 12(b)(6) – Failure to State Claim

"Rule 12(b)(6) requires a district court to dismiss a complaint if it fails to state a cognizable legal claim." *Ulferts v. Franklin Res., Inc.*, 554 F. Supp. 2d 568, 572 (D.N.J. 2008). To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, '[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). But "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal citation omitted). Additionally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## IV. DISCUSSION

Plaintiff claims that this Court has subject-matter jurisdiction over his claims under 28 U.S.C. § 2201 *et seq.* (the Declaratory Judgment Act); 28 U.S.C. § 1331 (the federal question statute); 5 U.S.C. §§ 555(b), 701 *et seq.*, 706 (the Administrative Procedure Act (APA)); and 28 U.S.C. § 1361 (the Mandamus Act). (Compl. ¶ 3).

The Declaratory Judgment Act, however, "is not an independent source of federal jurisdiction." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (internal citation omitted). To consider a claim under the Declaratory Judgment Act, a federal court must have jurisdiction under another federal statute. *Id*. Likewise, the federal question statute does not independently offer grounds for jurisdiction. Instead, it provides federal courts with subject-matter jurisdiction only in cases arising under some other source of federal law, such as the APA or Mandamus Act. *See generally* 28 U.S.C. § 1331.

The APA provides that federal courts shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). However, the APA does not apply where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The Supreme Court has clarified that "the only agency action that can be compelled under the APA is action legally required . . . . Thus, a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63–64 (2004) (emphasis in original). The APA therefore does not provide a basis for jurisdiction over a claim that an agency failed to take a discretionary action.

The Mandamus Act independently provides federal courts with jurisdiction to "compel an officer or employee of the U.S. or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Like the APA, however, mandamus is appropriate only where "a clear

nondiscretionary duty" is at issue. *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 121 (1988) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)).

But even if the APA and the Mandamus Act could potentially provide a source of subject-matter jurisdiction, Section 1252 of the INA bars judicial review as follows:

> Notwithstanding any other provision of law . . . , *no court shall have jurisdiction to review* . . . any . . . *decision or action* of the Attorney General or the Secretary of Homeland Security the authority for which is *specified under this subchapter* to be in the *discretion* of the Attorney General or the Secretary of Homeland Security. . . .

8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added). In other words, courts may not review decisions or actions taken by USCIS pursuant to discretionary authority specified in United States Code, Title 8, Chapter 12, Subchapter 2. Defendants contend that the plain language of the relevant statutes, the absence of a Congressionally mandated timeline, and policy considerations all lead to the conclusion that Congress has "specified" that the general pace of adjudicating applications for adjustment of status—including a decision to keep an application on indefinite hold—is within the Secretary's unreviewable discretion. (Def. Mov. Br. at 15–19). On the other hand, Plaintiff argues that "[n]othing in the statutes, which allow the Attorney General to make decisions on applications for permanent residency, allows the Attorney General to hold a case in perpetuity." (Pl. Opp. Br. at 5).

As discussed below, because the pace of the adjudication of Plaintiff's application is discretionary, 8 U.S.C. § 1252(a)(2)(B)(ii) strips the Court of jurisdiction over Plaintiff's claim that Defendants have unreasonably delayed adjudication of his Form I-485 application. Additionally, the Court determines that there is no evidence that Defendants have refused to adjudicate his Form I-485 application.

### a. Application of 8 U.S.C. § 1252(a)(2)(B)(ii)

First, the Court must determine whether USCIS has made a "decision" or taken an "action." *See* 8 U.S.C. § 1252(a)(2)(B)(ii); *Ahmed v. Holder*, 12 F. Supp. 3d 747, 755 (E.D. Pa. Mar. 19, 2014). Defendants contend that USCIS made an affirmative decision to initially place the application on hold and continues to "act" by keeping the application on hold. (Def. Mov. Br. at 12–14). Plaintiff disagrees, arguing that, in the context of an application of immigration status adjustment, a "decision or action" must mean either an approval or denial. (Pl. Opp. Br. at 5–7). Here, it is beyond dispute that USCIS made a decision and/or took an action when it formally placed Plaintiff's Form I-485 application on hold, as evidenced by the April 12, 2010 email from USCIS. (D.E. No. 1-5). *See Ahmed*, 12 F. Supp. 3d at 755 (finding a "decision or action" where plaintiff's application was formally placed on hold). Additionally, keeping the application on hold indefinitely is also a "decision or action." *See Safadi v. Howard*, 466 F. Supp. 2d 696, 700 (E.D. Va. 2006) (holding that "decision or action" encompasses "the ongoing adjudication process and the pace at which that action proceeds"); *see also Serrano v. Quarantillo*, No. 06-05221, 2007 WL 1101434 (D.N.J. Apr. 9, 2007) (endorsing the conclusions of *Safadi*). Plaintiff cites no case law suggesting otherwise, and so the Court is left to conclude that what Plaintiff actually objects to "is not the absence of any agency decision or action, but rather the decision that the agency made— the decision to place [his] application[] on hold until an applicable exemption was issued." *Namarra v. Mayorkas*, 924 F. Supp. 2d 1058, 1063 (D. Minn. 2013).

Accordingly, the Court must next determine whether "the authority for" the decision to keep Plaintiff's application on indefinite hold and the pace of processing adjustment applications in general is "specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security" as transferred to USCIS. *See* 8 U.S.C. § 1252(a)(2)(B)(ii);

*Ahmed*, 12 F. Supp. 3d at 755.  This question has proven divisive among district courts.  *Compare, e.g.*, *Ahmed v. Holder*, 12 F. Supp. 3d 747 (E.D. Pa. Mar. 19, 2014) (finding jurisdiction proper because discretion not sufficiently specified under subchapter), *with Beshir v. Holder*, 10 F. Supp. 3d 165 (D.D.C. Jan. 27, 2014) (finding that INA stripped it of jurisdiction because discretion was specified under subchapter); *see also Beshir*, 10 F. Supp. at 172 (listing cases).  For the reasons below, the Court respectfully disagrees with the decision reached by our sister Third Circuit district court in *Ahmed* and adopts the rationale of *Beshir*.

The Third Circuit has yet to weigh in directly on whether "the authority for" the decision to keep an application for adjustment of status on indefinite hold and the pace of processing adjustment applications in general is "specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security" as transferred to USCIS, but it has provided some key guidance with respect to § 1252(a)(2)(B)(ii) generally.

> The jurisdiction-stripping language of § 1252(a)(2)(B)(ii) applies not to all decisions the Attorney General is entitled to make, but to a narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the Attorney General's discretion.  Put another way, the Attorney General's general authority to arrive at an outcome through the application of law to facts is distinct from the issue of whether Congress has "specified" that the decision lies in the Attorney General's discretion and is thus unreviewable.

*Alaka v. Att'y Gen. of U.S.*, 456 F.3d 88, 95–96 (3d Cir. 2006).   This language mirrors a decision decided approximately two months earlier, where the Third Circuit Court of Appeals stated that "[t]he key to § 1252(a)(2)(B)(ii) lies in its requirement that the discretion giving rise to the jurisdictional bar must be 'specified' by statute.  In other words, the language of the statute in question must provide the discretionary authority before the bar can have any effect." *Khan v. Att'y Gen. of U.S.*, 448 F.3d 226, 232–33 (3d Cir. 2006) (internal citation omitted).

The Third Circuit's approach is consistent with the United States Supreme Court's recent decision in *Kucana v. Holder*, 558 U.S. 233 (2010), which involved the applicability of 8 U.S.C. § 1252(a)(2)(B)(ii) to denials of motions to reopen deportation hearings. The authority for denying the motions to reopen was not codified in any statute, but found only in a regulation created by the Attorney General. *Id.* at 242–43. The precise issue before the *Kucana* Court was "whether the proscription of judicial review stated in § 1252(a)(2)(B) applies not only to Attorney General determinations made discretionary by statute, but also to determinations declared discretionary by the Attorney General himself through regulation." *Id.* at 237. The *Kucana* Court found that "both clauses [of 8 U.S.C. § 1252(a)(2)(B)] convey that Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute." *Id.* at 247. "If Congress wanted the jurisdictional bar to encompass decisions specified as discretionary by regulation along with those made discretionary by statute, . . . Congress could easily have said so." *Id.* at 248.

This Court agrees with the rationale in *Beshir* and finds that the plain language of the relevant statutes shows that Congress has "specified" that the general pace of adjudicating applications for adjustment of status—including a decision to keep an application on indefinite hold—is within the Secretary's unreviewable discretion. In other words, the Court finds that the "authority" for determining the pace of adjudicating applications for adjustment of status is "specified under [Title 8, Chapter 12, Subchapter II] to be in the discretion" of USCIS. 8 U.S.C. § 1252(a)(2)(B)(ii).

Two comparable statutes within Title 8, Chapter 12, Subchapter II of the United States Code—8 U.S.C. § 1159(b) and 8 U.S.C. § 1255(a)—are relevant to the adjudication of adjustment applications. Section 1159(b) provides that "[t]he Secretary of Homeland Security or the Attorney

General, *in the Secretary's or the Attorney General's discretion and under such regulations as the Secretary or the Attorney General may prescribe*, may adjust . . . the status of any alien granted asylum." 8 U.S.C. § 1159(b) (emphasis added). Analogously, section 1255(a) states that "[t]he status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, *in his discretion and under such regulations as he may prescribe*, to that of an alien lawfully admitted for permanent residence." 8 U.S.C. § 1255(a) (emphasis added). Thus, the plain language of the statutes clearly grants discretion over the promulgation of regulations for adjudicating adjustment of status applications, which "necessarily includes" discretion over the pace of adjudication. *Beshir v. Holder*, 10 F. Supp. 3d 165, 174 (D.D.C. Jan. 27, 2014) ("Granting the Attorney General and the Secretary the discretion to promulgate regulations governing the process of adjudication necessarily includes a grant of discretion over the pace of adjudication."); *see also Namarra*, 924 F. Supp. 2d at 1064 ("[T]he statutory grant of discretion to promulgate regulations governing *how* to make adjustment decisions necessarily carries with it the discretion to determine *when* those adjustment decisions will be made.") (emphasis in original). If the discretion to promulgate regulations did not include discretion over the pace of adjudication, "the grant of discretion would be illusory, given that courts could drastically alter the regulations prescribed by dictating what pace of adjudication the regulations must permit." *Labaneya v. U.S. Citizenship & Immigration Servs.*, 965 F. Supp. 2d 823, 832 (E.D. Mich. 2013).

Beyond the plain language of the statutes, the Court also notes that the absence of a Congressionally mandated deadline and national security considerations further support the conclusion that the pace of adjudication is discretionary and thus outside the jurisdiction of this Court. First, the Supreme Court has stated that judicial review "is not to be had if the statute is

13

drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Here, sections 1159(b) and 1255(a) provide no timeframe within which the Attorney General or the Secretary of Homeland Security must complete the review of an application for adjustment status. Second, the Court is cognizant of the national security considerations related to the adjudication of an adjustment of status application placed on hold because of terrorist-related inadmissibility. As one court aptly stated, "[o]ur national security requires that caution and thoroughness in these matters not be sacrificed for the purpose of expediency." *Safadi*, 466 F. Supp. 2d at 701. Indeed, "it appears that Congress designed the exemption process to be deliberately time-consuming." *Beshir*, 10 F. Supp. 3d at 178 (citations omitted).

The Court is thus satisfied that the decision to keep Plaintiff's application on indefinite hold is "specified under [Title 8, Chapter 12, Subchapter II of the United States Code] to be in the discretion of the Attorney General or the Secretary of Homeland Security" as transferred to USCIS. Therefore, the requirements of 8 U.S.C. § 1252(a)(2)(B)(ii) are met here, and the Court lacks jurisdiction over Plaintiff's Complaint.

Nevertheless, a district court in the Eastern District of Pennsylvania recently reached the opposite conclusion and found that 8 U.S.C. § 1252(a)(2)(B)(ii) did not apply because the Secretary's discretion to adjudicate the pace of applications was not "specified under" the relevant subchapter. *Ahmed v. Holder*, 12 F. Supp. 3d 747, 756 (E.D. Pa. Mar. 19, 2014). The district court in *Ahmed* relied on the Supreme Court's decision in *Kucana*, 558 U.S. at 233 and the Third Circuit's decisions in *Alaka*, 456 F.3d at 88 and *Khan*, 448 F.3d at 22 in support of its holding. The *Ahmed* court ultimately concluded that "neither the discretionary authority to determine the pace of application processing nor the discretionary authority to withhold adjustment applications

14

is 'specified under' the relevant subchapter" and "[t]herefore jurisdiction over a claim that adjudication has been unreasonably delayed is not barred by the INA's jurisdiction-stripping provision . . . ." *Ahmed*, 12 F. Supp. 3d at 756.

This Court respectfully disagrees with the decision reached by the district court in *Ahmed* and believes that its reliance on *Kucana, Khan*, and *Alaka* is misplaced. The *Ahmed* decision appears to suggest that the "discretion" at issue needs to be stated in explicit and elaborate detail in the statute in order for the jurisdiction-stripping provision to apply. *Id.* But this is an overly broad reading of *Kucana*, *Khan*, and *Alaka*, since they simply stand for the proposition that judicial review of discretionary decisions is barred under 8 U.S.C. § 1252(a)(2)(B)(ii) "*only when Congress itself* set out the Attorney General's discretionary authority *in the statute*." *Kucana*, 558 U.S. at 247 (emphasis added).

For example, in *Kucana*, the jurisdiction-stripping provision did not apply because the authority for the Board of Immigration Appeals to grant or deny a motion to reopen was "'specified' not in a statute, but only in the Attorney General's regulation . . . ." *Kucana*, 558 U.S. at 243. Similarly, in *Khan*, the Third Circuit found that the jurisdiction-stripping provision did not apply where the relevant statute was facially silent on whether an immigration judge had discretion, and only a regulation suggested discretion. *Khan*, 448 F.3d at 230 (citing 8 U.S.C. § 1229a(a)(1) and 8 C.F.R. § 1003.29 (2006)). Finally, in *Alaka*, the Third Circuit found that "two sentences" in the relevant statute "might suggest discretion" because they included the verbs "decides" and "determining." *Alaka*, 456 F.3d at 96 (citing 8 U.S.C. § 1231(b)(3)(B)). However, the Third Circuit made clear that "[t]he terms 'decide[ ]' or 'determin[e]' are not, standing alone, sufficient to 'specify' discretion" and therefore found the jurisdiction-stripping provision of the

INA inapplicable. *Id.* Taken together, § 1252(a)(2)(B)(ii) did not apply in these cases because the word "discretion" did not appear in the relevant statutes.

In other words, under *Kucana, Khan*, and *Alaka*, the statute only needs to specify discretion generally in order for the jurisdiction-stripping provision to apply; the statute does not need to detail the precise contours of that discretion, as the *Ahmed* decision suggests. Indeed, the remark in *Khan* (relied upon by the district court in *Ahmed*) that "to specify" means "[t]o state explicitly or in detail," 448 F.3d at 233 (citation omitted), was put into sharper focus two months later in *Alaka* when the Third Circuit clearly stated "the explicit use of language granting discretion—such as 'the Attorney General may, in his discretion'—would presumably trigger the application of § 1252(a)(2)(B)(ii) . . . ." 456 F. 3d at 98. That is precisely the case before the Court. Here, the *statutes themselves*—8 U.S.C. §§ 1159(b) and 1255(a)—*explicitly grant discretion* and permit the creation of regulations for adjudicating adjustment of status applications, thus triggering the jurisdiction-stripping provision. Therefore, *Kucana*, *Khan* and *Alaka* are distinguishable from the current case and do not entirely support the decision reached by the district court in *Ahmed*.

Furthermore, it is worth noting that the Third Circuit in *Khan* remarked that the Fifth Circuit Court of Appeals has "adopted the correct reading of § 1252(a)(2)(B)(ii)" as it pertains to specified authority for a discretionary action of the Secretary. *Khan*, 448 F.3d at 232. The Fifth Circuit, in turn, has found that the INA precludes jurisdiction over a claim of unreasonable delay in adjudication of an adjustment of status application. *Bian v. Clinton*, 605 F.3d 249, 255 (5th Cir. 2010), *vacated as moot*, 2010 WL 3633770 (5th Cir. Sept. 16, 2010). In particular, the Fifth Circuit concluded that "Congress has expressly precluded judicial review of the USCIS's pace of adjudication when the agency acts within its discretion and pursuant to the regulations that the agency deems necessary for carrying out its statutory grant of authority." *Id.*

16

For these reasons, the Court finds that it does not have jurisdiction over Plaintiff's Complaint. Accordingly, it need not continue its analysis under Rule 12(b)(6).

### b. No Evidence of Refusal to Adjudicate

Plaintiff claims that Defendants have "refused to adjudicate" his pending Form I-485 application. (Compl. ¶ 24). To the extent that Plaintiff is arguing that Defendants have failed to perform an arguably nondiscretionary duty, the Court lacks jurisdiction over this claim as described above in Part IV.A, *supra.* Nevertheless, the Court summarily notes that this claim is undermined by the record

It is undisputed that Plaintiff's Form I-485 application has been pending for over ten years. In their discretion, Defendants found that Plaintiff had engaged in terrorist activity during his time in Damdami Taksal and was therefore in admissible in accordance with 8 U.S.C. § 1182. (Canaan Decl. ¶¶ 13–14). It is also undisputed that in accordance with the 2008 USCIS memorandum, Plaintiff's application has been placed on indefinite hold rather than being denied outright, so that USCIS can consider exercising "exemption authority" which might allow USCIS to approve Plaintiff's case." (*See* D.E. No. 1-5, Apr. 2010 email).

The Court regrets that Plaintiff has been waiting for over ten years for adjudication of his Form I-485 application, but notes that Plaintiff has been granted work authorization and travel documents. (Canaan Decl. ¶ 35). Unfortunately, as noted above, "it appears that Congress designed the exemption process to be deliberately time-consuming," *Beshir*, 10 F. Supp. 3d at 178 (citations omitted), but a lack of a formal adjudication does not equate to a refusal to adjudicate.

## V. CONCLUSION

For the reasons above, Defendants' motion to dismiss is GRANTED. Plaintiff's petition for a writ of mandamus and complaint for declaratory relief are hereby dismissed *with* prejudice.

s/*Esther Salas*
**Esther Salas, U.S.D.J.**
